# COMMERCIAL BANK OF UTAH v. MADSEN et al.

No. 7584.   Decided October 10, 1951.   (236 P. 2d 343.)

See 59 C. J. S., Mortgages, sec. 752. Inadequacy of consideration as grounds for setting aside sale under foreclosure. 37 Am. Jur., Mortgages, sec. 643; 8 A. L. R. 1001.

*P. N. Anderson,* Nephi, *Eks Ayn Anderson,* Salt Lake City, for appellant.

*Don V. Tibbs,* Manti, for respondents.

CROCKETT, Justice.

The Commercial Bank of Utah, appellant here and plaintiff below, held a mortgage on the home of the defendants Madsen, to secure the sum of $1,950 out of a total indebtedness of $4,121.19. Foreclosure proceedings were brought; judgment of foreclosure was duly entered, and the property was the subject of a sheriff's sale. The bank takes this appeal asserting certain objections to the time and manner of sale by the sheriff, and the amount for which the property was sold.

After the entry of judgment the attorney for the bank delivered to the Sheriff of Sanpete County, a certified copy of the decree of foreclosure, an order of sale and a copy of a notice of sale, which specified the time and place thereof. The time set in the notice he handed to the sheriff was 10:00 o'clock a. m. on September 8, 1949; however, the attorney mentioned to the sheriff that 11:00 o'clock would

be a more convenient time for the plaintiff, and apparently left it to the sheriff to make the change in the notice. The sheriff proceeded to use the form of notice supplied by the attorney for the bank, as is customary, and gave notice of the sale by advertising and posting as required by law.

On the day of the sale the Sheriff and other interested parties appeared at 10:00 a. m. and after a little delay opened the sale for bids at 10:33 a. m. The first bid was for $49 which the sheriff rejected as unreasonable. Upon being asked what was reasonable, the sheriff said the property was worth $1,000. One of the bidders then said that it wasn't worth over $500, and a bid of that sum was made by him. Simultaneously another bidder entered a bid of $475. Next a bid of $501 was received from Jeppsen and upon no further bids being received, the property was sold to him for $501. A few minutes after the sale had been completed, a representative of the bank appeared, wanting to bid, but the sheriff refused to vacate the sale made to Jeppsen. The plaintiff expressly indicates in his brief that there is no intent to impute malfeasance to the sheriff.

After the sheriff's refusal to vacate the sale, the bank filed an application with the court to vacate it and included therein as a party Bob Jeppsen, the purchaser, as well as the defendants. As a part of the application the plaintiff indicated its willingness to bid $1,950 for the property, that is, the total amount for the secured indebtedness.

The court held a hearing on the application. The house occupied by the Madsens is an old dilapidated house located on one side of the property and the rest of it is uncleared vacant ground. The plaintiff introduced evidence that the property was worth $1,400 to $1,500; the defendants' evidence was that the property was worth $475 to $500. After hearing the evidence the judge stated that it was his opinion that the amount obtained on the foreclosure sale was "consistent with the value of the property on execution

sale", and ruled that the sale was conducted properly within the laws of the State and refused to vacate it.

On this appeal the plaintiff argues the same grounds as presented before the trial court: first, that the sale price accepted by the sheriff was grossly inadequate when compared to the fair market price of the land; second, that under Utah Rules of Civil Procedure 69 (e) (3), the property should have been sold as two separate parcels; and third, that the proceedings of the sheriff in failing to change the time of sale to 11 o'clock was irregular and prejudicial.

The general rule as to discretion of the trial court in cases involving inadequacy of consideration is stated in 59 C. J. S., Mortgages, § 750, p. 1382, as follows:

"* * * Each case depends largely on its own peculiar facts; and whether the circumstances, coupled with inadequacy of price, are sufficient to warrant setting aside the sale is a matter largely within the discretion of the trial court."

See also: *Chausse* v. *Bank of Garland,* 71 Utah 586, 268 P. 781; *Cole* v. *Canton Mining Co.,* 59 Utah 140, 202 P. 830; *National Realty Sales Co.* v. *Ewing,* 55 Utah 438, 186 P. 1103.

The instant case will not be determined on whether gross inadequacy of purchase price alone is sufficient to justify the setting aside of the sale, or even inadequacy of purchase price together with other circumstances, for the reason that we regard the decision of the trial court on the fact question involved as decisive.

This was not a sale between a willing buyer and a willing seller, where a fair price might have been arrived at by bargaining. There were other factors present: it was subject to redemption by the judgment debtor, and to possible infirmities of title. It is well known that purchasers at such sales are seeking bargains, when possible, and that

such a sale will rarely bring the full market price of the property. Mr. Paul M. Smith, who bid $500, stated flatly that he wasn't interested in the property at any price above that figure. At the hearing he qualified as a real estate expert and so testified as to its value. An offer to purchase for the full sum of the secured indebtedness made in plaintiff's petition in order to overthrow the sale is not necessarily evidence of what the bank may have been willing to pay for this property had it been dealing with a stranger with whom it had no contract of indebtedness.

The value of the property was the subject of conflicting evidence, and the trial court made the determination that the sale price was "consistent with the value of the property under an execution sale." This precludes any possibility whatever of this court ruling that the price paid was so disproportionate to the value as to shock the conscience. The trial court's judgment that the price was not inadequate is based on competent credible evidence, therefore we will not disturb it.

Rule 69 (e) (3) U. R. C. P., so far as here material to the question of selling in one or more parcels, provides:

"* * * when the sale is of real property, consisting of several known lots or parcels, they must be sold separately * * *."

The bank prepared and accepted a mortgage of this property as one parcel; in its pleadings, judgment, notice of sale and throughout the entire proceeding it was treated by the bank as one parcel of property. The sheriff and two other witnesses all testified that they considered the land as a single parcel of property. The judgment debtor testified to the effect that he did not object to the sale as a unit and that he had no reason to think more money could be raised if the lots were sold separately. The fact that the land is described as "Lots 1 and 2 of block 28, Plat A Manti City Survey" does not serve to make separate tracts of an otherwise unified parcel. For

a discussion to the effect that description of property by lots does not serve to make it separate parcels, see: 33 C. J. S., Executions, § 210, p. 449.

Finally it is contended that the failure of the sheriff to change the notice from 10:00 o'clock to 11:00 o'clock, or failure to notify the bank that he had not done so, resulted in grossly inadequate bids, to the injury of the bank. The evidence is just a little hazy as to what was done and said about changing the notice the bank's attorney left with the sheriff, but the latter did not deny that the request for a change was made. We assume that he did assent to the making of the change but failed to make it and used the notices as they had been prepared. Others relied on the notices as they were posted and published. The rule under which the sale was held, U. R. C. P. 69 (e) (3),—former Section 104-37-23, U. C. A. 1943, provides:

"Conduct of sale. All sales of property under execution must be made at auction to the highest bidder, between the hours of 9 o'clock a. m. and 5 o'clock p. m. * * *"

The sheriff, who is directed to conduct the sale, is at liberty to set such time as he desires within the limits prescribed. Under a similar rule it was so held in *Fox* v. *Curry*, 96 Mont. 212, 29 P. 2d 663.

In our case a definite time was specified in the notices, and a sale was regularly and properly had in accordance therewith. Actually the bank had no different or better right to bid at the sheriff's sale than any of the other parties attending who were there in response to the notice. After the sale had been legally, fairly and properly conducted and the property sold to the highest bidder, the mere fact that at a later time another purchaser came along and offered a greater price would not give him a right to have the sale vacated. To permit such sales to be thus upset would discourage bidding at them. And when would they come to rest? A sale which has been regularly

held and fairly conducted should not be set aside merely because a higher bid is offered later. See 152 A. L. R. 530 et sequi for cases and a discussion of upset bids in judicial sales. Of course it would be otherwise if there were fraud involved, which isn't present in this case. The bank is hardly in a position to complain if it did not know of the time so it could attend the sale. Any uncertainty concerning the time of the sale resulted from its own conduct through its attorney in preparing and delivering the notice to the sheriff indicating the time the sale was to be had. Ordinary care on its part in referring to the notice it had caused to be posted and published for others would have revealed the time of the sale and the difficulties encountered could have thus been avoided.

The judgment of the trial court refusing to vacate the sale is affirmed. Costs to respondents.

McDONOUGH and HENRIOD, JJ., concur.

WADE, Justice.

I dissent.

Here the bank has had a mortgage on this property to secure its indebtedness. It was entitled to a fair opportunity to bid it in at any figure which it felt would be most advantageous to it in liquidating its claim. Under the circumstances, I do not think it was afforded such an opportunity. I agree it acted negligently in not seeing that the time of the sale was changed in the notice, and in not noticing that such change had not been made. But I do not think that it should be deprived of an opportunity to protect its interests on that account. It seems to me that the sheriff could not in good faith sell this property knowing that the bank thought the sale would be held at 11:00 o'clock rather than at 10:00 o'clock without being assured that the bank did not intend to be present at the sale. If this was a bona fide sale to the bidder then the mortgagor would

also be interested in having it set aside so as to get a greater credit on the payment of his debt. But the debtor seems to be satisfied with the sale which suggests that the debtor may have some undisclosed interest in the sale.

I think that as a matter of fair play this sale should be set aside.

WOLFE, C. J., concurs in the dissenting opinion of WADE, J.